LEEMAN v. EDISON ELECTRIC ILLUMINATING CO. OF BROOKLYN.

(Supreme Court, Special Term, New York County. May, 1898.)

1. CORPORATIONS—POWER OF DIRECTORS—CONTRACTS—INJUNCTION.
    Directors authorized the execution of an agreement whereby the corporation was to purchase shares in another corporation through a trustee, with whom was to be deposited an amount in bonds as security for the payment of the outstanding indebtedness of the corporation whose stock was to be purchased. A mortgage was to be executed to secure new bonds issued to pay for the stock. The agreement stipulated that if, for any reason, the sale should fall through, the purchasing company was to pay to the assenting stockholders of the selling company $15,000 as liquidated damages. Held, that a motion by a stockholder of the purchasing company to restrain, pendente lite, the execution of the agreement, would not be entertained until it became apparent that the directors intended to consummate the deal without obtaining the consent of the holders of two-thirds of the stock of the company, as required by Stock Corporation Law, § 2, which forbids the issuance of such a mortgage without such consent, except purchase-money mortgages.

2. SAME—LIQUIDATED DAMAGES.
    As the purchase involved nearly $2,000,000, $15,000 was a moderate amount to stipulate for damages for nonfulfillment by the purchasers.

Motion by one Leeman against the Edison Electric Illuminating Company of Brooklyn to restrain pendente lite the execution of an agreement of purchase. Denied.

Sheehan & Collin, for plaintiff. ·
Frank Harvey Field, for defendant.

SCOTT, J. This is a motion by a stockholder of the defendant corporation to restrain pendente lite the execution by said corporation of a proposed agreement for the purchase, from the stockholders of the Municipal Electric Light Company of Brooklyn, of a majority of the capital stock of that company. The proposed agreement is set out at length in the moving papers, and the complaint

alleges that the directors of the defendant corporation have passed a resolution authorizing and directing its execution. It is not denied by the defendant that, unless restrained by this court, it will undertake to execute and carry out this agreement, either in the present form or with slight modifications. The plaintiff does not make any except the most general allegations of apprehended loss by depreciation of his stock in case the agreement is consummated, and in substance relies upon the proposition that the agreement necessarily involves, in carrying it out, the doing of certain unlawful acts by the directors. By the agreement, the defendant corporation is to purchase such shares of stock of the Municipal Electric Light Company as may be deposited with a trustee, paying therefor in cash or bonds, and is to deposit with the trustee $250,000 in bonds as security for the payment of all outstanding indebtedness of said Municipal Electric Light Company. If all the stockholders of the latter company offered to sell their stock under this agreement, it would be necessary for the defendant corporation to raise and pay them in cash or bonds $1,500,000, in addition to the $250,000 of bonds to be deposited as above stated. The defendant has now outstanding a mortgage for $2,500,000, on account of which bonds to the amount of $1,500,000 have been issued, leaving still unissued in the treasury $1,000,000. This amount, however, would not be sufficient to purchase a majority of the stock of the Municipal Company, and make the deposit providing for the debts. In order to provide for the necessary bonds and cash to carry the agreement into effect, it further provides that the defendant shall make a new consolidated mortgage, limited by the amount of the capital stock of the defendant corporation (which is now $4,000,000), and further limited, even if the capital stock should be increased, to $5,000,000. This mortgage is to be a lien upon all the present property of the defendant corporation, subject to its present first mortgage, and also a lien upon the stock of the Municipal Electric Light Company acquired under the agreement. It is proposed to reserve and set apart out of this new issue of bonds a sufficient amount to provide for the retirement of the outstanding issue of first mortgage bonds. The agreement further provides that if, "for any reason," the defendant corporation shall fail to carry out its agreement and pay for the municipal stock, and deposit the $250,000, then it shall pay to the assenting stockholders of the Municipal Company, to be divided among them ratably, the sum of $15,000 as liquidated damages.

It is not denied that the defendant corporation has legal authority to purchase the stock of the Municipal Company, and, indeed, such power is expressly conferred by section 40 of the stock corporation law. The alleged illegality of the agreement is found in the provision for the execution of a new consolidated mortgage, which, it is said, cannot be done without the consent of the holders of two-thirds of the stock of the company, which consent, it is conceded, has not yet been obtained. Section 2 of the stock corporation law forbids the issuance of any such mortgage, "except purchase-money mortgages," without the consent of two-thirds, in value, of the stockholders. It is not made clear to me that this proposed mortgage

can properly be called a "purchase-money mortgage"; and, for the purposes of this motion, I shall assume that it is not such a mortgage, and that it cannot be lawfully issued until the consent of the requisite number of stockholders is obtained. If the directors of the defendant corporation, without such consent, were about to execute and issue such a mortgage, and this motion was to restrain them from so doing, I should deem it proper to so restrain them; and if the agreement in question absolutely bound them to do so, or gave evidence of a fixed intention on their part to attempt to do so, it might be well argued that the court should interfere. As I read the agreement, however, no such case is presented here. It does not require a very extensive knowledge of business methods to realize that a transaction such as is contemplated here must necessarily be a matter of several successive steps, and that they must be taken one by one. There must be negotiation, propositions, and counter propositions, and afterwards, in most cases, a tentative agreement, subject to approval and ratification by those whose approval is necessary. Thus, it is perfectly proper, in a case like the present, that the directors (who, except as their power is limited by law, represent and act for the corporation) should conduct the negotiations for the stock of any company, which they think it is for the interest of their own company to acquire, and that they should even go to the length of entering into a provisional agreement to effect that purpose. If, as appears to be the case here, consummation of that agreement requires action on the part of the stockholders, such action can be and must be invited afterwards. The directors of the defendant corporation appear to have acted in precisely this manner. They have, as appears, conducted some negotiation. They have substantially determined upon a tentative agreement, which, to be fully carried out, will require action on the part of the stockholders; but they do not undertake to forestall such action, nor do they propose to leave their own company subject to indeterminate claims for damages if the agreement be not fully carried out. On the contrary, they provide for the extreme amount of damages which can be claimed "if, for any reason," the defendant corporation "shall fail to carry out its agreement"; and the amount so stipulated "as liquidated damages for any breach of the agreement" is apparently a very moderate one, in view of the magnitude of the proposed purchase. In effect, they propose to agree to pay $15,000 for the option of making what they must be supposed to deem a wise and advantageous purchase. I do not think it can be said that to do so much is beyond the power of the directors. I see nothing in the agreement to warrant the belief that the directors propose illegally to issue a mortgage, and there is certainly nothing in it inevitably pointing to such action on their part.

Motion denied, and temporary stay vacated, with $10 costs.